**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
SOUTHERN DIVISION**

| | |
|---|---|
| STEPHANIE FOSTER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NESTLE USA, INC., a Delaware corporation,<br><br>Defendant. | Case No.: _____<br><br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff Stephanie Foster ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint and Demand for Jury Trial against defendant Nestle USA, Inc. ("Defendant"). Plaintiff alleges the following upon personal knowledge, investigation of counsel, and information and belief.

## NATURE OF THE ACTION

1.     Defendant's prominent, front label representation that its Nestle Toll House Morsels (the "Products") contain "100% REAL CHOCOLATE" (the "Representation") is false, misleading, and deceptive.[1]

2.     Contrary to the express Representation, the Products contain two non-chocolate ingredients: soy lecithin and natural flavor (the "Non-Chocolate Ingredients"), which are included to mimic the taste and consistency of real chocolate.

---

[1] This Action includes in the definition of "Products" all sizes and flavors of Nestle Toll House Morsels sold during the Class Period, defined below, which state "100% REAL CHOCOLATE" on the front label, including but not limited to the following flavors: Milk Chocolate, Dark Chocolate, and Semi-Sweet Chocolate.

3.       The Non-Chocolate Ingredients are inexpensive substitutes for ingredients that are found in chocolate products that actually contain 100% real chocolate.

4.       Chocolate products that contain 100% real chocolate only have ingredients sourced from cacao beans, which include cacao (or cocoa) and cocoa butter.

5.       Unlike true 100% real chocolate products, the Products contain soy lecithin, in addition to cocoa butter.

6.       Soy lecithin is a food additive made from genetically modified soy, not from cacao beans, and is thus not a real chocolate ingredient.

7.       Soy lecithin is added to the Products to make them more viscous and to mimic the consistency of chocolate products that only contain cocoa butter.

8.       Unlike the Products, chocolate chips that actually contain 100% real chocolate do not contain any soy lecithin, but instead contain only cocoa butter.

9.       Cocoa butter is substantially more expensive than soy lecithin.

10.      On information and belief, soy lecithin is added to the Products to reduce manufacturing and ingredient costs.

11.      The Products also include natural flavors.

12.      Natural flavors are highly processed, chemical additives.

13.      Natural flavors included in chocolate are derived from non-chocolate ingredients or are chemically synthesized in a laboratory.

14.      Natural flavor is not sourced from cacao beans and is not a real chocolate ingredient.

15.      Natural flavor is added to the Products to enhance their chocolate taste.

16.      On information and belief, natural flavor is added to the Products to reduce

manufacturing and ingredient costs.

17.     Unlike the Products, chocolate chips that actually contain 100% real chocolate do not contain natural flavor.

18.     Consumers who purchase Defendant's Products reasonably believe that they are purchasing a premium, 100% real chocolate product.

19.     Reasonable consumers who purchase Defendant's Products do not know, and have no reason to know, that the Products contain inferior non-chocolate ingredients that are not sourced from cacao beans.

20.     Defendant's conduct in making the false and misleading Representation violates Illinois law.

21.     Plaintiff and members of the Class (defined herein) are harmed based on the price paid for the Products, which they would not have paid had they known that the Products do not contain 100% real chocolate.

22.     Plaintiff brings this action individually and on behalf of those similarly situated and seeks to represent an Illinois Subclass, a Multi-State Consumer Protection Class, and a Nationwide Class.  Plaintiff seeks damages, interest thereon, reasonable attorneys' fees and costs, restitution, other equitable relief, and disgorgement of all benefits Defendant has enjoyed from its unlawful, misleading and deceptive conduct, as detailed herein.  In addition, Plaintiff seeks injunctive relief to stop Defendant's unlawful practices in the manufacture, labeling and selling of the Products. Plaintiff makes these allegations based on her personal knowledge as to herself and her own acts and observations and, otherwise, on information and belief based on investigation of counsel.

## PARTIES

23.     Plaintiff Stephanie Foster resided within this district in Chicago, Illinois during the Class Period (defined below) prior to the filing of this Action.

24.     Plaintiff purchased the Products multiple times from stores located in Chicago, Illinois during the Class Period.

25.     Defendant Nestle USA, Inc. is a Delaware corporation, with its principal place of business at 1812 N. Moore Street, Arlington, Virginia 22209.

26.     Defendant manufactures, sells and distributes the Products and is responsible for the advertising, marketing and labeling of the Products.

27.     Defendant and its agents promoted, marketed, and sold the Products at issue in this jurisdiction and in this judicial district. The unfair, unlawful, deceptive, and misleading advertising and labeling of the Products was prepared and/or approved by Defendant and its agents, and was disseminated by Defendant and its agents through labeling and advertising containing the misrepresentations and omissions alleged herein.

## JURISDICTION AND VENUE

28.     This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (1) there are 100 or more putative Class Members, (ii) the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, and (iii) there is minimal diversity because Plaintiff and Defendant are citizens of different states. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

29.     This Court has personal jurisdiction over Defendant because Defendant has substantial aggregate contacts with this District.

30.     Defendant has engaged in conduct in this District that has a direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons throughout the United States, including because Defendant placed the Products into the stream of commerce directed at this District, and because Defendant purposely availed itself of the laws of the United States and the State of Illinois.

31.     In accordance with 28 U.S.C. §§ 1391(a) and (b), venue is proper in this District because a substantial part of the conduct giving rise to Plaintiff's claims occurred while she resided in this judicial district. Venue is also proper under 18 U.S.C. § 1965(a) because Defendant transacts substantial business in this District.

## COMMON FACTUAL ALLEGATIONS

### A.  Defendant Manufactures, Labels and Advertises the Products

32.     Defendant manufactures, labels, markets, promotes, advertises, and sells the Products.

33.     On the front label of the Products, Defendant uniformly and prominently represents that the Products are "100% REAL CHOCOLATE."

34.     The front label Representation is an optional, advertising statement.

35.     The front label Representation is not required or governed by any federal or FDA guidance or regulation.

36.     Defendant makes the front label Representation to increase sales of the Products.

37.     The back label of the Products prominently states "INGREDIENTS YOU CAN TRUST" and that the Products contain no artificial flavors or colors; contain no preservatives; are gluten free; and contain Responsibly Sourced Cocoa (the "Back Label Statements").

38.     The Back Label Statements reinforce the front label Representation—that the Products are "100% Real Chocolate."

39.     Under the Nutrition Facts Panel, Defendant lists the Product ingredients in small print.

40.     The ingredient list is in substantially smaller print than the front label Representation and Back Label Statements.

41.     If an ordinary, reasonable consumer were to view the ingredient list, the consumer would not know—and could not be expected to know—that soy lecithin and natural flavor are not real chocolate ingredients.

42.     The following images depict the front and back Product labels:





**B. Defendant Charges a Price Premium for the Products**

43.     Defendant charges a price premium for its Products based on the false and misleading Representation that they contain "100% Real Chocolate."

44.     For example, as of July 22, 2024, a 12-ounce bag of Nestle Toll House chocolate chips was priced at $3.99 on the Target.com website.

45.     As of the same date, a 12-ounce bag of Good & Gather brand chocolate chips was priced at $2.99 on the Target.com website.

46.     The Good & Gather chocolate chips also contain soy lecithin and natural flavor.

47.     Unlike the Products at issue, the Good & Gather chocolate chips do not have any label representation they contain ***100%*** real chocolate. Instead, the front label of the Good & Gather chocolate chips states that they are "Made with Real Chocolate."

48.     As of July 22, 2024, a 12-ounce bag of Nestle Toll Hose chocolate chips was priced at $5.49 on the jewelosco.com website.

49. As of the same date, a 12-ounce bag of Signature SELECT chocolate chips was priced at $4.29 on the jewelosco.com website.

50. The Signature SELECT chocolate chips also contain soy lecithin and natural flavor.

51. Unlike the Products, the Signature SELECT chocolate chips do not have any label representation they contain 100% real chocolate. Instead, the front label of the Signature SELECT chocolate chips states "Semi-Sweet chocolate chips".

52. Based on independent research, the Nestle Products are the only chocolate chips available in retail stores that both (a) bear the front label Representation "100% REAL CHOCOLATE" and (b) contain soy lecithin and natural flavors.

53. Other chocolate chip brands, which are labeled as containing 100% real chocolate, contain only ingredients that are in fact sourced from cacao beans.

54. "Enjoy Life" chocolate chips, for example, state on the front label that they are "100% REAL CHOCOLATE."

55. Unlike the Products, the Enjoy Life chocolate chips do not contain soy lecithin or natural flavors.

56. The Enjoy Life chocolate chips contain only three ingredients: cane sugar, unsweetened chocolate, and cocoa butter.

57. The Enjoy Life chocolate chips in fact contain 100% real chocolate because unsweetened chocolate and cocoa butter are sourced from cacao beans and are real chocolate ingredients.

58. On information and belief, Defendant intentionally made and makes the Representation to increase revenue from its sale of the Products.

59.     Consumers pay a price premium based on Defendant's Representation and suffer an ascertainable loss between what was represented (chips that contain 100% real chocolate) and what was received (chips that have inferior, non-chocolate ingredients, which are designed to mimic real chocolate).

60.     In making the Representation, Defendant intentionally omitted and concealed material information that soy lecithin and natural flavor are not real chocolate ingredients.

**B.  Defendant's Products Are Misbranded Under the Law**

*The Products Are Misbranded Because They Are Not 100% Real Chocolate*

61.     Identical Illinois and federal laws require that food products be accurately and truthfully labeled.

62.     The Federal Food, Drug, and Cosmetic Act ("FDCA") prohibits "[t]he introduction or delivery for introduction into interstate commerce of any food, drug, or cosmetic that is adulterated or misbranded." 21 U.S.C. § 331(a).[2]

63.     The Federal Food Drug and Cosmetic Act ("FDCA") and regulations promulgated thereunder are expressly adopted in the Illinois Food, Drug and Cosmetic Act ("IFDCA"). *See* 410 ILCS 620/1, *et seq.*

64.     Illinois has also adopted labeling regulations, which impose requirements identical to federal regulations.

65.     Any labeling violation of the FDCA is also a violation of the IFDCA.

66.     A food is misbranded "(a) If (1) its labeling is false or misleading in any particular, or (2) in the case of a food to which section 350 of this title applies, its advertising is false or

---

[2] Plaintiff does not seek to enforce the FDCA. As set forth herein, the FDCA is identical to the IFDCA and Defendant's violation of the IFDCA constitutes a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (the "ILCS").

misleading in a material respect or its labeling is in violation of section 350(b)(2) of this title." *See* 21 U.S.C. § 343(a); 410 ILCS 620/11, *et seq*.

67.    Pursuant to the IFDCA: "If an article is alleged to be misbranded because the labeling is misleading or if an advertisement is alleged to be false because it is misleading, then in determining whether the labeling or advertisement is misleading, there shall be taken into account (among other things) not only representations made or suggested by statement, word, design, device, sound or any combination thereof, but also the extent to which the labeling or advertisement fails to reveal material facts in the light of such representations or material facts . . . ." ILCS 620/2.11.

68.    Misbranding reaches not only false claims, but also those claims that might be technically true, but still misleading.  If any label representation is misleading, the entire product is misbranded, and no other label statement can cure a misleading statement.

### The Products Cannot be Lawfully Manufactured or Sold

69.    The ILCS prohibits the "manufacture, sale or delivery, holding or offering for sale of any food, drug, device or cosmetic that is adulterated or misbranded."  ILCS 620/3.1.

70.    The ILCS prohibits the "adulteration or misbranding of any food, drug, device or cosmetic."  ILCS 620/3.2.

71.    The ILCS prohibits the "receipt in commerce of any food, drug, device or cosmetic that is adulterated or misbranded and the delivery or proffered delivery thereof for pay or otherwise."  ILCS 620/3.3.

72.    The ILCS prohibits the "dissemination of any false advertisement."  ILCS 620/3.5.

73.    The Products are misbranded under the FDCA and ILCS because the label Representation is false and misleading as described herein.

74. The Products are falsely advertised under the FDCA and ILCS because the label Representation is false and misleading as described herein.

75. Defendant knew or should have known and knowingly and/or intentionally violated the ILCS by manufacturing, labeling, placing and/or receiving the misbranded Products in commerce.

76. Plaintiff and the Class have been unlawfully deprived of money in an illegal transaction that occurred because Defendant sold them a Product that could not be legally manufactured, sold or possessed.

77. Consumers have been directly injured by Defendant's illegal acts and misconduct. This harm goes beyond mere economic injury.

78. Due to the legal prohibition on the sale and possession of the Products, consumers have been unwittingly placed, solely and directly by Defendant's conduct, in a legal position that no reasonable consumer would choose.

79. In addition, because misbranded food—including the Products—cannot be legally sold or possessed, it has no value.

80. Plaintiff and members of the Class are entitled to a refund of the price paid to purchase the Products.

81. Plaintiff and members of the Class may be harmed again because they want to purchase the Products in the future; however, without injunctive relief, Plaintiff and members of the Class will not be able to ascertain whether Defendant has truthfully and legally labeled the Products.

82. Accordingly, absent an injunction prohibiting the misbranding, consumers are likely to be confused and/or misled and deceived in the future.

**C. Plaintiff and Class members Purchased the Products to Their Detriment**

83.     Plaintiff and consumers purchased the Products to their detriment.

84.     The Products bear Defendant's uniform, misleading Representation.

85.     Defendant intentionally advertised, labeled, and sold the Products with the Representation.

86.     Defendant knew or should have known that reasonable consumers would consider the Representation material in deciding to purchase the Products, including that a reasonable person would attach importance to the Representation in determining whether to purchase the Products.

87.     In addition, Defendant knew or should have known that reasonable consumers would consider as material whether the Products were legally saleable in determining whether to purchase the Products.

88.     Defendant made material misrepresentations and omissions that the Products contain "100% Real Chocolate" with the intent to defraud consumers in that, among other things, consumers would be less likely to purchase the Products if they knew the truth.

89.     In addition, Defendant made material misrepresentations and omissions regarding whether the Products were legally saleable.

90.     Plaintiff and Class members suffered damage in purchasing the Products, including based on the purchase price paid for the Products and because the Products are not legally saleable.

91.     It is possible, however, that Plaintiff would purchase the Products in the future if the Representation was truthful and/or the Products were accurately labeled.

**PLAINTIFF'S FACTUAL ALLEGATIONS**

92.     Plaintiff Stephanie Foster has purchased the Products numerous times during the Class Period (defined below).

93.     Plaintiff purchased the Products from Target and Jewel Osco stores located in Chicago.

94.     Plaintiff purchased the Products, including in the following flavors: Milk Chocolate, Dark Chocolate, and Semi-Sweet Chocolate.

95.     To the best of her recollection, Plaintiff most recently purchased the Products from Jewel Osco in the last year for approximately $5.49 for a 12-ounce bag.

96.     Plaintiff purchased the Products for personal and family use.

97.     Plaintiff saw the "100% Real Chocolate" Representation at the time of purchase and understood the Representation to mean that the Products contain 100% real chocolate.

98.     Plaintiff was misled and deceived by the Representation.

99.     Plaintiff would not have purchased the Products, or would have purchased them on different terms, if she had known that the Representation was false.

100.     Plaintiff discontinued purchasing the Products when she realized that the Products are not 100% real chocolate.

101.     As a result of Defendant's actions, Plaintiff has incurred economic damages.

102.     As set forth herein, Plaintiff would like to purchase the Products in the future if they in fact contain 100% real chocolate.

## CLASS ACTION DEFINITION AND ALLEGATIONS

103.    **Class Definition:**  Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of herself, on behalf of all others similarly situated, and as a member of the Classes defined as follows (collectively, the "Class"):

> **Nationwide Class**: All citizens of the United States, who, within the applicable statute of limitations period, purchased Defendant's Products for personal use and who do not claim any personal injury from using the Products (the "Nationwide Class");

> **Multi-State Consumer Protection Class**: All citizens who, within the applicable statue of limitations period, purchased Defendant's Products for personal use within the following states: Illinois (815 ICLS §§ 505/1, et seq.); California (Cal. Bus. & Prof. Code § 17200, et seq.); Florida (Fla. Stat. §§ 501.201, et seq.); Illinois (815 ICLS §§ 505/1, et seq.); Massachusetts (Mass. Gen. Laws Ch. 93A, et seq.); Michigan (Mich. Comp. Laws §§ 445.901, et seq.); Minnesota (Minn. Stat. §§ 325F.67, et seq.); New Jersey (N.J. Stat. §§ 56:8- 1, et seq.); New York (N.Y. Gen. Bus. Law §§ 349, et seq.); Washington (Wash. Rev. Code §§ 19.86.010, et seq.)[3], and who do not claim any personal injury from using the Products (the "Multi-State Consumer Protection Class"); and

> **Illinois Subclass:** All citizens of Illinois who, within the three years prior to the filing of the initial Complaint, purchased Defendant's Products in the State of Illinois for personal use and who do not claim any personal injury from using the Products (the "Illinois Subclass").

104.    Members of the Class described are referred to as "Class members".

105.    Excluded from the Class is: (1) Defendant, its assigns, successors, and legal representatives; (ii) any entities in which Defendant has a controlling interest; (iii) federal, state,

---

[3] The consumer protection and consumer fraud laws of each of the states that comprise the Multi-State Consumer Protection Class are similar to the consumer fraud law of the State of Illinois, as set forth herein. *See e.g.* Cal. Bus. & Prof. Code § 17200, *et seq.*; Fla. Stat. §§ 501.201, *et seq.*; 815 ICLS §§ 505/1, *et seq.*; Mass. Gen. Laws Ch. 93A, *et seq.*; Mich. Comp. Laws §§ 445.901, *et seq.*; Minn. Stat. §§ 325F.67, *et seq.*; N.J. Stat. §§ 56:8- 1, *et seq.*; N.Y. Gen. Bus. Law §§ 349, *et seq.*; Wash. Rev. Code §§ 19.86.010, *et seq. See also Mullins v. Direct Digital, LLC,* No. 13-cv-1829, 2014 WL 5461903 (N.D. Ill. Sept. 30, 2014)*, aff'd,* 795 F.3d 654 (7th Cir. 2015).

and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; (iv) all persons presently in bankruptcy proceedings or who obtained a bankruptcy discharge in the last three years; and (v) any judicial officer presiding over this matter and person within the third degree of consanguinity to such judicial officer.

106.    Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time, or to propose or eliminate sub-classes, in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

107.    Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

108.    **Numerosity – Federal Rule of Civil Procedure 23(a)(1):**  The exact size of the Class is unknown and not available to the Plaintiff at this time, but it is clear that individual joinder is impracticable.  On information and belief, Class members number in the tens of thousands, but may be ascertained from Defendant's books and records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice. The Products are marketed and sold throughout the United States and the State of Illinois.

109.    **Common Questions Predominate – Federal Rule of Civil Procedure 23(a)(2):**  Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Such common questions of law or fact include, *inter alia*:

- Whether the Product Representation and omissions are false, misleading and/or deceptive;

- Whether Defendant engaged in unlawful, unfair or deceptive business practices by manufacturing, labeling, advertising and/or selling the Products;

- Whether Defendant violated Illinois law;

- Whether Defendant committed a breach of express or implied warranty;

- Whether Defendant's conduct was and is negligent;

- Whether Plaintiff and the Class are entitled to equitable and/or injunctive relief;

- Whether Plaintiff and the Class have sustained damage as a result of Defendant's unlawful conduct;

- The proper measure of damages sustained by Plaintiff and the Class; and

- Whether Defendant was unjustly enriched.

110. Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff, individually and on behalf of the other Class members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale in comparison, in both quality and quantity, to the numerous common questions that dominate this action.

111. **Typicality – Federal Rule of Civil Procedure 23(a)(3):** Plaintiff's claims are typical of the claims of the members of the Class she seeks to represent because Plaintiff, like the Class members, purchased Defendant's misbranded Products. Defendant's unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. Plaintiff and the Class sustained similar injuries arising out of Defendant's conduct. Plaintiff's and Class Member's claims arise from the same practices and

course of conduct and are based on the same legal theories.

112. **<u>Adequacy – Federal Rule of Civil Procedure 23(a)(4)</u>:** Plaintiff is an adequate representative of the Class she seeks to represent because her interests do not conflict with the interests of the members of the Class Plaintiff seeks to represent. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel experienced and competent in the prosecution of complex class actions, including complex questions that arise in consumer protection litigation.

113. **<u>Superiority and Substantial Benefit – Federal Rule of Civil Procedure 23(b)(3)</u>:** A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

    a. The claims presented in this case predominate over any questions of law or fact, if any exists at all, affecting any individual member of the Class;

    b. Absent a Class, the members of the Class will continue to suffer damage and Defendant's unlawful conduct will continue without remedy while Defendant profits from and enjoys its ill-gotten gains;

    c. Given the size of individual Class members' claims, few, if any, members could afford to or would seek legal redress individually for the wrongs Defendant committed against them, and absent members have no substantial interest in individually controlling the prosecution of individual actions;

d. When the liability of Defendant has been adjudicated, claims of all members of the Class can be administered efficiently and/or determined uniformly by the Court; and

e. This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and members of the Class can seek redress for the harm caused to them by Defendant.

114. Because Plaintiff seeks relief for all members of the Class, the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendant.

115. The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Federal Rule of Civil Procedure 23(b)(2) are met as Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the Class members, thereby making appropriate final injunctive relief and equitable relief, as described below, with respect to the Class as a whole.

116. The prerequisites to maintaining a class action pursuant to Rule 23, *et seq.* are also met as questions of law or fact common to Class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

117. Plaintiff and Plaintiff's counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

### COUNT I
**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act**
**815 ILCS 505/1,** *et seq.*
**(for Plaintiff and the Illinois Subclass)**

118. Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

119. Plaintiff brings this cause of action on her own behalf and on behalf of the Illinois Subclass.

120. The purpose of the Illinois Consumer Fraud Act, 815 ILCS 505/1 *et seq.*, ("ICFA") is to protect consumers against fraud and unfair and deceptive acts in the conduct of commerce.

121. Defendant's Products constitute "merchandise" within the meaning of 815 ILCS 505/1(b).

122. Defendant is a "person" within the meaning of 815 ILCS 505/1(c).

123. Defendant's activities continue a "sale" within the meaning of 815 ILCS 505/1(d).

124. The ICFA prohibits, in pertinent part: "Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact."

125. Defendant's conduct constitutes an unfair and/or deceptive act and practice pursuant to the ICFA.

126. The deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression and/or omission of material facts alleged herein occurred in connection with Defendant's conduct of trade or commerce in Illinois

127. Defendant engaged in deception, fraud, false pretense, false promise, and/or misrepresentation in its manufacture and sale of the Products, including by making the false and misleading Representation described herein.

128. Defendant intended that Plaintiff and Class members rely on the Representation and the concealment, suppression and/or omissions of the material facts concerning the actual nature of the Non-Chocolate Ingredients in the Products.

129. Defendant intended that Plaintiff and Class members rely on the concealment, suppression and/or omissions of the material fact that the Products are not legally saleable.

130. Defendant's conduct, described above, was and is likely to mislead—and Defendant intended to mislead and deceive—reasonable consumers.

131. Plaintiff and the Class were misled and deceived.

132. Defendant is aware that the Representation and omissions it has made about the Products were and continue to be false and misleading.

133. Defendant's unfair and deceptive acts or practices were the foreseeable and actual cause of Plaintiff and Class members suffering actual damage.

134. Plaintiff and Class members purchased the Products for their own use or for use by a member of their household and not for resale.

135. Plaintiff and Class members were deceived as a result of Defendant's misrepresentation and omissions.

136. Plaintiff and the Class suffered injury in fact and lost money as a result of purchasing the Products due to Defendant's unlawful, unfair, and deceptive conduct.

137.    In addition, Defendant's unfair and deceptive acts and practices caused Plaintiff and Class members to purchase Products that were and are not legally saleable and therefore have no economic value.

138.    Plaintiff and the Class were injured through their purchase of the Products, including because they would not have purchased the Products on the same terms if they had known that the Representation was untrue; they paid a price premium for the Products; and they purchased a Product that was not capable of being legally sold.

139.    Plaintiff seeks equitable and injunctive relief to stop Defendant's misconduct, as complained of herein, and seeks restitution of the amounts Defendant acquired through the unfair, unlawful, and fraudulent business practices described herein, including based on a refund of the purchase price paid for the Products.

## COUNT II

### Violation of the Illinois Food, Drug and Cosmetic Act
### 410 ILCS 620/1 *et seq.*
### (for Plaintiff and the Illinois Subclass)

140.    Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

141.    Plaintiff brings this cause of action on her own behalf and on behalf of the Illinois Subclass.

142.    As described herein, Defendant has violated the IFDCA because the Products are misbranded under the law.  *See* 410 ILCS 620/3.1 *et seq.*

143.    As described herein, Defendant has violated the IFDCA because Defendant has disseminated false and/or misleading food advertisements, including the Representation on the package of the Products. *See* 410 ILCS 620/3.5.

144.    As described herein, because the Products are misbranded and falsely advertised, they cannot be lawfully manufactured, sold, delivered, received, held or offered for sale.  *See* 410 ILCS 620/3.1-3.5.  Accordingly, the Products are legally worthless.

145.    Plaintiff and Class members purchased the Products and were harmed based on, among other things, the price paid for a Product that is misrepresented and misbranded.

146.     Under Illinois law, "[a] private cause of action is found to exist under a statute where: (1) the plaintiff falls within the class of persons sought to be protected; (2) the plaintiff's injury is one intended to be prevented; (3) the cause of action is consistent with the underlying purpose of the statute; and (4) the private cause of action is necessary to effectuate the purpose of the statute, i.e., a civil remedy is needed." *Reuben H. Donnelley Corp. v. Brauer*, 275 Ill.App.3d 300, 311 (1st Dist. 1995).

147.    A private cause of action should be found here because: (1) Plaintiff falls within the class of persons sought to be protected by the IFDCA because the statute is designed in part to protect consumers in Illinois from misbranded food products; (2) plaintiff's injury is intended to be prevented by the express language of the IFDCA, which prohibits the misbranding and false advertising of food products; (3) this cause of action is consistent with the underlying purpose of the statue, which seeks to protect consumers; and (4) a private cause of action is needed in order to provide a remedy for Defendant's misconduct and to hold Defendant accountable for lawfully representing and labeling the food products manufactured and sold in Illinois.

148.    Plaintiff and the Class were injured through their purchase of the Products, including because they would not have purchased the Products on the same terms if they had known that the Representation was untrue; they paid a price premium for the Products; and they purchased a Product that was not capable of being legally sold.

149.    Defendant's violation of the IFDCA also constitutes an unfair or deceptive act or practice and a predicate violation of the ICFA, as described above.

## COUNT III

### Violation of State Consumer Fraud/Consumer Protection Acts
### (for Plaintiff and the Multi-State Consumer Protection Class or, alternatively, the Illinois Subclass)

150.    Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

151.    Plaintiff brings this cause of action on her own behalf and on behalf of the Multi-State Consumer Protection Class and/or the Illinois Subclass.

152.    The Consumer Fraud Acts and Consumer Protection Statutes of the States comprising the Multi-State Consumer Protection Class (the "Statutes") are similar and prohibit the use of unfair and/or deceptive business acts and practices in the conduct of commerce.

153.    Defendant's actions, as complained of herein, constitute unfair, unlawful, unconscionable, deceptive, or fraudulent acts or practices in violation of the Statutes of each of the States comprising the Multi-State Consumer Protection Class.

154.    Defendant's uniform, misleading and deceptive Representation and omissions to Plaintiff and proposed Class members were, and are, unfair and deceptive acts and practices under the Statutes.

155.    Defendant intended that consumer rely on the Representation and omissions, as set forth herein.

156.    Defendant made the Representation and omissions intentionally, and with reckless disregard for the truth.

157.    It was likely that consumers would rely on Defendant's express label

Representation.

158.    Consumers reasonably relied on Defendant's Representation, and were misled.

159.    Plaintiff and the proposed Class members were proximately injured by Defendant's unlawful conduct, including because they would not have purchased the Products on the same terms; they paid a price premium for the Products; and they purchased a Product that was not capable of being legally sold.

160.    Plaintiff and the proposed Class members are entitled to damages, restitution, disgorgement, and/or such orders or judgments as may be necessary to restore to any person in interest, any money which may have been acquired by means of such unfair and deceptive acts and practices, and to the relief set forth below.

**COUNT IV**

**Breach of Express Warranty**
**(for Plaintiff and the Nationwide Class or, alternatively, the Illinois Subclass)**

161.    Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

162.    Plaintiff brings this cause of action on behalf of herself, the Nationwide Class and/or the Illinois Subclass.

163.    Defendant is a merchant of the Products.

164.    By advertising and selling the Products at issue, Defendant makes and made promises and affirmations of fact on the Products' packaging and labeling, as described herein.

165.    This labeling and advertising constitutes an express warranty and became part of the basis of the bargain between Plaintiff and members of the Class, and Defendant.

166.    Defendant, through its advertising and labeling, created an express warranty that the Products comports with the label Representation.  Specifically, Defendant created an express

warranty that the Products are 100% real chocolate.

167.  The express warranty appears on all Product labels and specifically relates to the goods being sold.

168.  Despite Defendant's express warranty about the nature of the Products, the Products do not comport with the Representation. Thus, the Products are not what Defendant represented them to be.

169.  Accordingly, Defendant breached the express warranty about the Products and their qualities because the Products do not conform to Defendant's affirmations and promises.

170.  Plaintiff and Class members reasonably relied on Defendant's express warranty.

171.  Plaintiff's counsel provided Defendant with pre-suit notice of the breach of warranty.

172.  Plaintiff and members of the Class purchased the Products.

173.  Defendant breached the warranty laws of the states of the Nationwide Class, as follows: Code of Ala. § 7-2-313; Alaska Stat. § 45.02.313; A.R.S. § 47-2313; A.C.A. § 4-2-313; Cal. Comm. Code § 2313; Colo. Rev. Stat. § 4-2-313; Conn. Gen. Stat. § 42a-2-313; 6 Del. C. § 2-313; D.C. Code § 28:2-313; Fla. Stat. § 672.313; O.C.G.A. § 11-2-313; H.R.S. § 490:2-313; Idaho Code § 28-2-313; 810 I.L.C.S. 5/2-313; Ind. Code § 26-1-2-313; Iowa Code § 554.2313; K.S.A. § 84-2-313; K.R.S. § 355.2-313; 11 M.R.S. § 2-313; Md. Commercial Law Code Ann. § 2-313; 106 Mass. Gen. Laws Ann. § 2-313; M.C.L.S. § 440.2313; Minn. Stat. § 336.2-313; Miss. Code Ann. § 75-2-313; R.S. Mo. § 400.2-313; Mont. Code Anno. § 30-2-313; Neb. Rev. Stat. § 2-313; Nev. Rev. Stat. Ann. § 104.2313; R.S.A. 382-A:2-313; N.J. Stat. Ann. § 12A:2-313; N.M. Stat. Ann. § 55-2-313; N.Y. U.C.C. Law § 2-313; N.C. Gen. Stat. § 25-2-313; N.D. Cent. Code § 41-02-30; II. O.R.C. Ann. § 1302.26; 12A Okl. St. § 2-313; Or. Rev. Stat. § 72-3130; 13 Pa. Rev.

Stat. § 72-3130; R.I. Gen. Laws § 6A-2-313; S.C. Code Ann. § 36-2-313; S.D. Codified Laws, § 57A-2-313; Tenn. Code Ann. § 47-2-313; Tex. Bus. & Com. Code § 2.313; Utah Code Ann. § 70A-2-313; 9A V.S.A. § 2-313; Va. Code Ann. § 59.1-504.2; Wash. Rev. Code Ann. § 6A.2-313; W. Va. Code § 46-2-313; Wis. Stat. § 402.313; and Wyo. Stat. § 34.1-2-313.

174.    As a direct and proximate result of Defendant's breach of express warranty, Plaintiff and members of the Class were harmed, including because they would not have purchased the Products on the same terms; they paid a price premium for the Products; and they purchased a Product that was not capable of being legally sold.

175.    Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other general and specific damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial.

## COUNT V

### Breach of Implied Warranty of Merchantability
### (for Plaintiff and the Nationwide Class or, in the alternative, the Illinois Subclass)

176.    Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

177.    Plaintiff brings this cause of action on behalf of herself, the Nationwide Class and/or the Illinois Subclass.

178.    Defendant is a merchant and was at all relevant times involved in the manufacturing, distributing, warranting, and/or selling of the Products.

179.    The Products are considered a "good" under the relevant laws and Defendant knew or had reason to know of the specific use for which the Products, as a good, was purchased.

180. Defendant entered into agreements with retailers to sell its Products to be used by Plaintiff and Class Members for personal use.

181. Defendant labeled the Products and impliedly warranted that the Products comport with the Representation.

182. In addition, Defendant impliedly warranted that the Products were legally saleable.

183. Defendant knowingly and intentionally misbranded the Products.

184. Defendant knew or should have known that the Products were misbranded based on the label Representation.

185. Defendant knew or should have known that the Products were misbranded under the law and could not be lawfully sold.

186. Defendant breached the warranty implied in the contract for sale of the Products because the Products cannot and could not pass without objection in the trade under the contract description, the goods were not of fair average quality within the description, and the Products were and are unfit for their intended and ordinary purpose. Accordingly, Plaintiff and the Class did not receive the goods as implied warranted by Defendant to be merchantable.

187. Defendant's warranty expressly applies to the purchaser of the Products, creating privity between Defendant and Plaintiff and Class members.

188. Privity is nonetheless not required because Plaintiff and Class members are the intended beneficiaries of Defendant's warranties and its sale through retailers. Defendant's retailers were not intended to be the ultimate consumers of the Products and have no rights under the warranty agreements. Defendant's warranties were designed for and intended to benefit the consumer only, including Plaintiff and Class members.

189.     Plaintiff and Class members purchased the Products in reliance upon Defendant's skill, judgment and the implied warranties.

190.     The Products were not altered by Plaintiff and the Class.

191.     The Products were defective when they left the exclusive control of Defendant.

192.     Plaintiff's counsel provided sufficient notice to Defendant that the Products were not fit for the intended purpose and/or were not otherwise merchantable.

193.     No reasonable consumer, including Plaintiff, would knowingly purchase products that are not lawfully saleable.

194.     Defendant breached the warranty laws of the states of the Nationwide Class, as follows: Code of Ala. § 7-2-314; Alaska Stat. § 45.02.313; A.R.S. § 47-2314; A.C.A. § 4-2-314; Cal. Comm. Code § 2314; Colo. Rev. Stat. § 4-2-314; Conn. Gen. Stat. § 42a-2-314; 6 Del. C. § 2-314; D.C. Code § 28:2-314; Fla. Stat. § 672.314; O.C.G.A. § 11-2-314; H.R.S. § 490:2-314; Idaho Code § 28-2-314; 810 I.L.C.S. 5/2-314; Ind. Code § 26-1-2-314; Iowa Code § 554.2314; K.S.A. § 84-2-314; K.R.S. § 355.2-314; 11 M.R.S. § 2-314; Md. Commercial Law Code Ann. § 2-314; 106 Mass. Gen. Laws Ann. § 2-314; M.C.L.S. § 440.2314; Minn. Stat. § 336.2-314; Miss. Code Ann. § 75-2-314; R.S. Mo. § 400.2-313; Mont. Code Anno. § 30-2-313; Neb. Rev. Stat. § 2-314; Nev. Rev. Stat. Ann. § 104.2314; R.S.A. 382-A:2-314; N.J. Stat. Ann. § 12A:2-314; N.M. Stat. Ann. § 55-2-314; N.Y. U.C.C. Law § 2-314; N.C. Gen. Stat. § 25-2-314; N.D. Cent. Code § 41-02-31; II. O.R.C. Ann. § 1302.27; 12A Okl. St. § 2-314; Or. Rev. Stat. § 72-3140; 13 Pa. Rev. Stat. § 72-314; R.I. Gen. Laws § 6A-2-314; S.C. Code Ann. § 36-2-314; S.D. Codified Laws, § 57A-2-314; Tenn. Code Ann. § 47-2-314; Tex. Bus. & Com. Code § 2.314; Utah Code Ann. § 70A-2-314; 9A V.S.A. § 2-314; Va. Code Ann. § 59.1-504.3; Wash. Rev. Code Ann. § 6A.2-314; W. Va. Code § 46-2-314; Wis. Stat. § 402.314; and Wyo. Stat. § 34.1-2-314.

195.     Plaintiff and the Class were injured through their purchase of the Products, including because they would not have purchased the Products on the same terms if they had known that the Representation was untrue; they paid a price premium for the Products; and they purchased Products that were not capable of being legally sold.

196.     By reason of the foregoing, Plaintiff and the Class were damaged in the amount paid for the Products.

197.     As a direct and proximate result of the foregoing, Plaintiff and Class members suffered and continue to suffer financial damage and injury, and are entitled to all damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

<u>COUNT VI</u>

**Negligent Misrepresentation**
**(for Plaintiff and the Nationwide Class or, in the alternative, the Illinois Subclass)**

198.     Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

199.     Plaintiff brings this cause of action on behalf of herself, the Nationwide Class and/or the Illinois Subclass

200.     As described herein, Defendant made a material misrepresentation concerning the purported 100% real chocolate in the Products; and that the Products were legally saleable.

201.     Defendant had a duty to accurately and truthfully disclose facts about the Non-Chocolate Ingredients.

202.     In making the Representation, Defendant knew or should have known that the Representation was false, misleading, or made without knowledge of truth or veracity.

203.     At an absolute minimum, Defendant negligently misrepresented and/or omitted material facts about the Products.

204.    Defendant intended to induce and actually induced Plaintiff and Class members to purchase the Products.

205.    Plaintiff and Class members reasonably and justifiably relied on Defendant's negligent misrepresentation and omissions in purchasing the Products.

206.    Plaintiff and Class members would not have purchased the Products, or would have purchased them on different terms, had they known the truth about Defendant's misrepresentation and omissions.

207.    As a direct and proximate cause of Defendant's misrepresentation and omissions, Plaintiff and the Class members have suffered damages in an amount to be proved at trial.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff individually and on behalf of the Class, prays for an Order as follows:

A.    Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff as representative of the Class, and appointing her counsel as class counsel;

B.    Declaring that Defendant's conduct violates the statutes referenced herein;

C.    Awarding all actual, general, special, incidental, punitive, statutory, and consequential damages to which Plaintiff and Class members are entitled;

D.    Awarding pre-judgment and post-judgment interest on such monetary relief;

E.    Granting appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendant to accurately and truthfully advertise, label and sell the Products;

F.    Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees; and

G.       Awarding such other and further relief as equity and justice may require.

## **JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully Submitted,

**STEPHANIE FOSTER**, individually and on behalf of all others similarly situated,

Dated:  September 17, 2024          By:  /s/ Adam C. York
                                                            One of Plaintiff's Attorneys

Adam C. York (6294143)
ayork@kamberlaw.com
Michael Aschenbrener (6292306)
masch@kamberlaw.com
KamberLaw LLC
220 N. Green St.
Chicago, IL 60607
Tel: 212-920-3072
Fax: 212-202-6364
Firm no. 62824

*Naomi B. Spector
nspector@kamberlaw.com
KamberLaw LLP
3451 Via Montebello, Suite 192-212
Carlsbad, CA 92009
Tel: 310-400-1053
Fax: 212-202-6364

*pro hac vice application forthcoming