**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| STEPHANIE FOSTER, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No.: 1:24-cv-08536 |
| v. | ) ) | Hon. Steven C. Seeger |
| NESTLÉ USA, INC., a Delaware corporation, | ) ) | |
| Defendant. | ) ) | |

**DEFENDANT NESTLÉ USA, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT AND
<u>STRIKE MULTI-STATE AND NATIONWIDE CLASS ALLEGATIONS</u>**

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................... 1

II. STATEMENT OF RELEVANT FACTS ............................................................... 2

III. NESTLÉ'S "100% REAL CHOCOLATE" STATEMENT IS TRUE ............................. 2

IV. LEGAL STANDARD ............................................................................................ 4

    A. Motion to Dismiss ........................................................................................ 4

    B. Motion to Strike ........................................................................................... 4

V. ARGUMENT ......................................................................................................... 5

    A. Plaintiff Fails to State a Claim under the ICFA. ........................................ 5

    B. The IFDCA Lacks a Private Right of Action. ............................................ 8

    C. Plaintiff Lacks Standing Under the Laws of States in Which She Was Not
        Injured. .......................................................................................................... 9

    D. Plaintiff Fails to Plausibly Allege a Breach of Express Warranty ................ 10

    E. Plaintiff's Implied Warranty Claim Must be Dismissed. ........................... 10

    F. Plaintiff's Negligent Misrepresentation Is Barred as a Matter of Law. ........ 11

    G. Plaintiff Is Not Entitled to Equitable Remedies ....................................... 13

    H. Plaintiff's Claims are Preempted. ............................................................. 13

    I. Plaintiff's Prayer for Punitive Damages Should be Stricken ...................... 14

    J. Plaintiff's Multi-State and Nationwide Class Allegations Should Be
        Stricken. ..................................................................................................... 15

VI. CONCLUSION ..................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...................................................................................4, 14

*Bahl v. D. A. Express, Inc.*,
   1990 WL 304278 (N.D. Ill. June 14, 1990) .........................................................15

*Baldwin v. Star Sci., Inc.*,
   78 F. Supp. 3d 724 (N.D. Ill. 2015) ..............................................................10, 15

*Bartosiake v. Bimbo Bakeries USA, Inc.*,
   632 F. Supp. 3d 789 (N.D. Ill. 2022) ...................................................................5

*Beardsall v. CVS Pharmacy, Inc.*,
   953 F.3d 969 (7th Cir. 2020) ...............................................................................7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..............................................................................................4

*Bell v. Publix Super Mkts., Inc.*,
   982 F.3d 468 (7th Cir. 2020) .........................................................................5, 13

*Berarov v. Archer-Daniels-Midland Co.*,
   2019 WL 277717 (N.D. Ill. Jan. 22, 2019) ...........................................................9

*Brooks v. Ross*,
   578 F.3d 574 (7th Cir. 2009) ...............................................................................6

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
   761 F.3d 732 (7th Cir. 2014) .........................................................................5, 13

*Chiappetta v. Kellogg Sales Co.*,
   2022 WL 602505 (N.D. Ill. Mar. 1, 2022)..........................................................13

*Covington v. Chasteen*,
   2024 WL 1404379 (N.D. Ill. Feb. 20, 2024) ........................................................6

*DaimlerChrysler Corp. v. Cuno*,
   547 U.S. 332 (2006)............................................................................................15

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
   2013 WL 4506000 (N.D. Ill. Aug. 23, 2013) ................................................10, 15

*DeMaso v. Walmart Inc.*,
    655 F. Supp. 3d 696 (N.D. Ill. 2023) ................................................................11

*DM Trans, LLC v. Scott*,
    38 F.4th 608 (7th Cir. 2022) ..............................................................................13

*First Midwest Bank, N.A. v. Stewart Title Guar. Co.*,
    843 N.E.2d 327 (Ill. 2006) ................................................................................12

*Floyd v. Pepperidge Farm, Inc.*,
    581 F. Supp. 3d 1101 (S.D. Ill. 2022) ..........................................................12, 13

*Fuchs v. Menard, Inc.*,
    2017 WL 4339821 (N.D. Ill. Sept. 29, 2017) ....................................................10

*Fullerton v. Corelle Brands, LLC*,
    2019 WL 4750039 (N.D. Ill. Sept. 30, 2019) ....................................................11

*Glazebrook v. Chobani LLC*,
    619 F. Supp. 3d 231 (D. Mass. 2022) ................................................................8

*Gubala v. CVS Pharmacy, Inc.*,
    2015 WL 3777627 (N.D. Ill. June 16, 2015) ......................................................8

*Gustavson v. Wrigley Sales Co.*,
    961 F. Supp. 2d 1100 (N.D. Cal. 2013) ............................................................14

*Huston v. Conagra Brands, Inc.*,
    2022 WL 4647251 (C.D. Ill. Sept. 30, 2022) ......................................................9

*Indep. Trust Corp. v. Stewart Info. Servs. Corp.*,
    665 F.3d 930 (7th Cir. 2012) ..........................................................................2, 4

*Kampmann v. Procter & Gamble Co.*,
    699 F. Supp. 3d 678 (C.D. Ill. 2023) ................................................................5

*Karlinski v. Costco Wholesale Corp.*,
    616 F. Supp. 3d 753 (N.D. Ill. 2022) ................................................................6

*Lederman v. Hershey Co.*,
    2022 WL 3573034 (N.D. Ill. Aug. 19, 2022) ......................................................6

*Lee v. Mondelez Int'l, Inc.*,
    637 F. Supp. 3d 116 (S.D.N.Y. 2022) ................................................................8

*Lewis v. Casey*,
    518 U.S. 343 (1996) ........................................................................................15

*Manley v. Hain Celestial Grp., Inc.*,
   417 F. Supp. 3d 1114 (N.D. Ill. 2019) ............................................................11, 12

*Moorman Mfg. Co. v. Nat'l Tank Co.*,
   91 Ill. 2d 69 (1982) ......................................................................................11, 12

*Reuben H. Donnelly Corp. v. Brauer*,
   275 Ill. App. 3d 300 (1st Dist. 1995) ......................................................................9

*Rice v. Dreyer's Grand Ice Cream, Inc.*,
   624 F. Supp. 3d 922 (N.D. Ill. 2022) ....................................................................11

*Rudy v. D.F. Stauffer Biscuit Co.*,
   666 F. Supp. 3d 706 (N.D. Ill. 2023) ....................................................................13

*Saccameno v. U.S. Bank Nat'l Ass'n*,
   943 F.3d 1071 (7th Cir. 2019) ............................................................................14

*Sarr v. BEF Foods, Inc.*,
   2020 WL 729883 (E.D.N.Y. Feb. 13, 2020) ..............................................................8

*Sienna Ct. Condo. Ass'n. v. Champion Aluminum Corp.*,
   129 N.E.3d 1112 (Ill. 2018) ..............................................................................12

*Slowinski v. BlueTriton Brands, Inc.*,
   2024 WL 3757097 (N.D. Ill. Aug. 9, 2024) ....................................................7, 13, 14

*Sneed v. Ferrero U.S.A., Inc.*,
   656 F. Supp. 3d 777 (N.D. Ill. 2023) ................................................................11, 12

*United Food & Com. Workers Unions & Emps. Midwest Health Benefits Fund v. Walgreen Co.*,
   2012 WL 3061859 (N.D. Ill. July 26, 2012), *aff'd*, 719 F.3d 849 (7th Cir. 2013) ...................9

*Williams v. Cenlar FSB*,
   2024 WL 3694477 (N.D. Ill. Aug. 7, 2024) ..............................................................5

*Wright v. Fam. Dollar, Inc.*,
   2010 WL 4962838 (N.D. Ill. Nov. 30, 2010) ............................................................4

*Yasmin & Yaz (Drospirenone) Mktg., Sales Prac. & Prods. Liab. Litig. v. Bayer Corp.*,
   2010 U.S. Dist. LEXIS 127727 (S.D. Ill. Dec. 3, 2010) ................................................15

**Statutes**

21 U.S.C. § 341 ............................................................................................13

21 U.S.C. § 343–1(a)(1) ....................................................................................13

21 U.S.C. § 343(g) ..................................................................................................13

Illinois Consumer Fraud and Deceptive Business Practices Act ........................................... *passim*

Illinois Food, Drug, and Cosmetic Act .........................................................1, 9, 13, 14

**Other Authorities**

21 C.F.R. § 163.111 ....................................................................................................3

21 C.F.R. § 163.123 ....................................................................................................3

21 C.F.R. § 163.123(b)(3) .................................................................................4, 7, 14

21 C.F.R. § 163.123(b)(5) .................................................................................4, 7, 14

21 C.F.R. § 163.130 ....................................................................................................3

21 C.F.R. § 163.130(b)(3) .................................................................................4, 7, 14

21 C.F.R. § 163.130(b)(5) .............................................................................4, 7, 8, 14

Fed. R. Civ. P. 8 ......................................................................................................14

Fed. R. Civ. P. 9(b) ..............................................................................................4, 15

Fed. R. Civ. P. 12(b)(6) ............................................................................................4

Fed. R. Civ. P. 23(c)(1)(A) .....................................................................................4, 5

Fed. R. Civ. P. 23(d)(1)(D) ....................................................................................5, 15

U.S. Const., art. III ............................................................................................10, 15

## MEMORANDUM OF LAW

### I.    INTRODUCTION

Plaintiff Stephanie Foster claims that "100% Real Chocolate" products "only have ingredients sourced from cacao beans, which includes cacao (or cocoa) and cocoa butter." Compl. ¶ 4. Based on her own unsupported and counterfactual understanding, she contends Nestlé's "100% Real Chocolate" representation on its semi-sweet, milk, and dark chocolate morsels (together, the "Products") is false or misleading because the Products contain "two non-chocolate ingredients: soy lecithin and natural flavor[.]" *Id*. ¶ 2. On this theory, she alleges claims on behalf of herself and putative classes for: Count I: Violation of Illinois Consumer Frand and Deceptive Business Practices Act ("ICFA"); Count II: Violation of Illinois Food, Drug, and Cosmetic Act ("IFDCA"); Count III: Violation of State Consumer Fraud Acts; Count IV: Breach of Express Warranty; Count V: Breach of Implied Warranty; and Count VI: Negligent Misrepresentation. Each fails and should be dismissed.

Plaintiff's ICFA claim (Count I) and breach of express warranty claim (Count IV) fail because Nestlé's "100% Real Chocolate" representation is true, and she cannot plausibly allege deception in light of the FDA's undisputed definition of chocolate and the disclosures on the Products' packaging. Her IFDCA claim (Count II) fails because she lacks a private cause of action under the statute. Next, Plaintiff's claims under the consumer protection, warranty, and tort laws of states to which she has no connection and in which she suffered no injury (Counts III-VI) fail for lack of standing. Her implied warranty claim (Count V) also fails because she does not—and cannot—plausibly allege the Products are not fit for their ordinary purpose (i.e., to eat) and because she lacks privity with Nestlé. And her negligent misrepresentation claim (Count VI) is barred by the economic loss doctrine.

1

Also barred is Plaintiff's request for injunctive and declaratory relief. These equitable remedies are unavailable where, like here, Plaintiff cannot plausibly allege inadequate remedies at law. In addition, Plaintiff's prayer for punitive damages should be stricken because she has not sufficiently pled actual malice. Finally, Plaintiff lacks standing to assert claims on behalf of putative multi-state and nationwide classes brought under states' laws where she suffered no injury and as such, they should be stricken.

## II.    STATEMENT OF RELEVANT FACTS

Plaintiff, a resident of Illinois, alleges she "purchased the Products" from Target and Jewel-Osco stores in Chicago. Compl. ¶¶ 92-93, 95. The Complaint contains an image of the semi-sweet chocolate Product's packaging (but not images of the milk chocolate or dark chocolate Products). *Id*. ¶ 42.[1] Plaintiff allegedly saw the "100% Real Chocolate" statement on the Products' label and understood it "to mean that the Products contain 100% real chocolate." *Id*. ¶ 97. Though she does not take issue with the FDA's definition of chocolate and does not allege what "100% real chocolate" means to reasonable consumers, she contends "100% real chocolate" is made "only [of] ingredients sourced from cacao beans, which include cacao (or cocoa) and cocoa butter." *Id*. ¶ 4. Based on her invented definition, she contends the "100% Real Chocolate" statement is deceptive because the Products contain "two non-chocolate ingredients: soy lecithin and natural flavor." *Id*. ¶ 2.

## III.   NESTLÉ'S "100% REAL CHOCOLATE" STATEMENT IS TRUE

The FDA defines semi-sweet chocolate as follows:

(a) Description.

---

[1] Concurrently with this motion, Nestlé files a Request for Judicial Notice ("RJN"). *Indep. Trust Corp. v. Stewart Info. Servs. Corp*., 665 F.3d 930, 943 (7th Cir. 2012) (in ruling on motion to dismiss, district court may take judicial notice of the indisputable fact that documents in the public domain exist and that they say what they say). *See* RJN, Ex. A (milk chocolate packaging), Ex. B (dark chocolate packaging), Ex. C (semi-sweet chocolate packaging).

(1) Sweet chocolate is the solid or semiplastic food prepared by intimately mixing and grinding chocolate liquor with one or more of the optional dairy ingredients and one or more optional nutritive carbohydrate sweeteners, and may contain one or more of the other optional ingredients specified in paragraph (b) of this section.

. . .

(3) Semisweet chocolate or bittersweet chocolate is sweet chocolate that contains not less than 35 percent by weight of chocolate liquor complying with the requirements of § 163.111 and calculated in the same manner as set forth in paragraph (a)(2) of this section.

(b) Optional ingredients. The following safe and suitable ingredients may be used:

. . .

(3) Spices, natural and artificial flavorings, ground whole nut meats, ground coffee, dried malted cereal extract, salt, and other seasonings that do not either singly or in combination impart a flavor that imitates the flavor of chocolate, milk, or butter;

. . .

(5) Emulsifying agents, used singly or in combination, the total amount of which does not exceed 1.0 percent by weight.

21 C.F.R. § 163.123. The FDA similarly defines milk chocolate with minor and immaterial differences in relation to the allegations in this case. *See* 21 C.F.R. § 163.130. While the FDA does not define dark chocolate, it is unlikely it would view dark chocolate differently than semi-sweet and milk chocolate, at least in terms of the alleged violative ingredients pled in Plaintiff's Complaint. Review of Nestlé's semi-sweet and milk chocolate packaging shows ingredients conforming to the FDA's definition and the dark chocolate packaging similarly confirms its ingredients are perfectly aligned with those definitions, as follows:

**Semi-Sweet Morsels:** Sugar, Chocolate Liquor, Cocoa Butter, Milk Fat, Soy Lecithin, and Natural Flavor.

**Dark Chocolate Morsels**: Chocolate Liquor, Sugar, Cocoa Butter, Milk Fat, Nonfat Dry Milk, Natural Flavor.

**Milk Chocolate Morsels**: Sugar, Chocolate Liquor, Cocoa Butter, Nonfat Dry Milk, Milk Fat, Soy Lecithin, Natural Flavor.

*See* Compl. ¶ 42; *see also* RJN, Ex. A (milk chocolate), Ex. B (dark chocolate), Ex. C (semi-

sweet chocolate).

While the semi-sweet and milk chocolate Products contain soy lecithin and natural flavor, both are contemplated as ingredients by the FDA in what it defines as semi-sweet chocolate and milk chocolate. It states that they "may contain … optional ingredients," such as "natural and artificial flavorings" and "emulsifying agents . . . the total amount of which does not exceed 1.0 percent by weight" and still be considered chocolate. 21 C.F.R. § 163.123(b)(3) & (5); 21 C.F.R. § 163.130(b)(3) & (5). Dark chocolate does not contain soy lecithin but does contain natural flavor that tracks these FDA regulations. Thus, each of these Products is 100% Real Chocolate according to FDA's regulatory definitions, rendering the claim literally true and not misleading.

## IV.    LEGAL STANDARD

### A.  Motion to Dismiss.

To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead facts to create "a reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Indeed, the complaint must establish a "plausible"—not merely "conceivable"—right to relief. *See id*. at 570. "To meet this plausibility standard, the complaint must supply 'enough fact to raise a reasonable expectation that discovery will reveal evidence' supporting the plaintiff's allegations." *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012) (quoting *Twombly*, 550 U.S. at 556). Where claims sound in fraud, a complaint must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

### B.  Motion to Strike.

"Rule 23(c)(1)(A) instructs courts to determine whether a class may be certified '[a]t an

4

early practicable time[.]" *Wright v. Fam. Dollar, Inc.*, 2010 WL 4962838, at *1 (N.D. Ill. Nov. 30, 2010); *see* Fed. R. Civ. P. 23(c)(1)(A). Therefore, a motion to strike class allegations may be brought at the pleading stage under Rule 23(d)(1)(D), so that the Court may "require that the pleadings be amended to eliminate allegations about representation of absent persons, and that the action proceed accordingly[.]" *See* Fed. R. Civ. P. 23(d)(1)(D).

## V.     ARGUMENT

### A.  Plaintiff Fails to State a Claim under the ICFA.

To state a claim under the ICFA, a plaintiff must allege: "(1) a deceptive or unfair act or promise by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) that the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 739 (7th Cir. 2014) (quotation marks omitted) (dismissing ICFA claim).[2] In a case based on allegedly deceptive advertising, "Plaintiff must plead that 'the relevant labels are likely to deceive reasonable consumers,' which 'requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Bartosiake v. Bimbo Bakeries USA, Inc.*, 632 F. Supp. 3d 789, 794 (N.D. Ill. 2022) (quoting *Bell v. Publix Super Mkts., Inc.*, 982 F.3d 468, 474–75 (7th Cir. 2020)). And where her claim concerns a purportedly "unfair" act, Plaintiff must allege the challenged conduct (a) 'offend[s] public policy', (b) is 'immoral, unethical, oppressive, or unscrupulous,' or (c) 'cause[s] substantial injury to

---

[2] To the extent Plaintiff asserts an ICFA claim based on an omission, *see*, *e.g.,* Compl. ¶¶ 126, 128-29, she does not identify what, precisely, was omitted from the Products' label. Other than an allegation that "Defendant had a duty to accurately and truthfully disclose facts about the Non-Chocolate Ingredients," *id.* ¶ 201, Plaintiff makes no attempt to plead an omission claim under the ICFA. *See Kampmann v. Procter & Gamble Co*., 699 F. Supp. 3d 678, 692 (C.D. Ill. 2023) (ICFA claim dismissed where consumer failed to "clearly identify a communication containing a misrepresentation or material omission").

consumers.'" *Williams v. Cenlar FSB*, 2024 WL 3694477, at *11 (N.D. Ill. Aug. 7, 2024).

Plaintiff's ICFA claim fails because she cannot plausibly allege deception or an unfair act. Starting with the former, Plaintiff has not plausibly pled that a reasonable consumer would be deceived by the "100% Real Chocolate" statement on the Products' packaging simply because the Products include the ingredients soy lecithin and natural flavor. While Plaintiff claims that "[c]hocolate products that contain 100% real chocolate only have ingredients sourced from cacao beans, which include cacao (or cocoa) and cocoa butter," Compl. ¶ 4, she offers no citation or support for her concocted definition, and the Court need not accept it as true. *Covington v. Chasteen*, 2024 WL 1404379, at *8 (N.D. Ill. Feb. 20, 2024) (Seeger, J.) ("Legal conclusions do not make a claim.") (*citing Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (opining that courts "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements")).

To be sure, the Complaint lacks any plausible allegations about how reasonable consumers understand the phrase "100% real chocolate." Without this as a baseline, Plaintiff cannot plausibly plead deception. This alone requires dismissal. "Whether Defendant's label could 'plausibly deceive a reasonable consumer' depends on what chocolate means to a reasonable consumer, not what it means to Plaintiff." *Karlinski v. Costco Wholesale Corp.,* 616 F. Supp. 3d 753, 762 (N.D. Ill. 2022) (finding chocolate label not misleading as a matter of law despite allegation it "contains more vegetable oils than chocolate"); *Lederman v. Hershey Co*., 2022 WL 3573034, at *4 (N.D. Ill. Aug. 19, 2022) (dismissing claims because "While Plaintiff may have an acute sense of fudge, is the reasonable consumer as discerning? Not likely."). Contrary to Plaintiff's suggestion, that the claim appears on the front of the package does not affect this conclusion. *See* Compl. ¶¶ 34-35.

The "reasonable consumer" standard requires a court considering allegedly false or

misleading advertising to "look holistically at [the challenged] advertising to determine whether it is misleading." *Beardsall v. CVS Pharmacy, Inc*., 953 F.3d 969, 978 (7th Cir. 2020). While courts generally agree that a fine print disclosure cannot cure a clearly misleading statement on the front of packaging, clarifying information found elsewhere on the packaging (including the rear label and ingredient panel) may establish that a challenged packaging claim is not misleading. *Id*. As to the capacity to deceive, a recent decision from this Court, *Slowinski v. BlueTriton Brands, Inc.*, 2024 WL 3757097, at *9-10 (N.D. Ill. Aug. 9, 2024) (Seeger, J.), is instructive. There, the Court found it was unclear as to whether the adjective "100%" in the phrase "100% natural spring water" was descriptive of "natural," "spring water," or "water," but regardless, the presence of microplastics in the water failed to render the phrase deceptive such that it could support a claim under the ICFA. *Id*. at *9-10. The Court relied upon the FDA's definition of spring water, which provided "a reasonable definition" for a particular food or beverage and "lists labeling disclosures that are affirmatively required," to assess the plausibility of the allegations. *Id*. at *10-11.

As in *Slowinski*, here, the FDA's definitions of chocolate are dispositive. The FDA defines semi-sweet chocolate and milk chocolate such that they "may contain … optional ingredients," such as "natural and artificial flavorings" and "emulsifying agents . . . the total amount of which does not exceed 1.0 percent by weight." 21 C.F.R. § 163.123(b)(3) & (5); 21 C.F.R. § 163.130(b)(3) & (5). Plaintiff does not plausibly plead that reasonable consumers have a different understanding. Soy lecithin, one of the "Non-Chocolate Ingredients" Plaintiff challenges, is an emulsifier[3] that is not present in the Products in an amount exceeding 1% of their total weight (Plaintiff does not

---

[3] *See* RJN, Ex. D (Lecithin, https://www.encyclopedia.com/sports-and-everyday-life/food-and-drink/food-and-cooking/lecithin, last accessed Oct. 29, 2024) ("Soybeans are by far the most important commercial source of lecithin . . . Commercial lecithin is widely used to process food products, including baking mixes, candy, chewing gum, chocolate, ice cream, macaroni and noodles, margarine, whipped toppings, and so on. It is used as an emulsifier – a substance that can blend water and oil."); *see also* RJN, Ex. E.

allege otherwise), placing it squarely within the FDA's definition of an "optional ingredient" in chocolate. *See id.* Natural flavoring, as used in the Products, falls within the FDA's definition, too. *See id.* So, according to the FDA, the semi-sweet and milk chocolate Products are, in fact, "100% real chocolate." Nestlé's dark chocolate Product does not use soy lecithin but does use natural flavor that tracks the FDA's definitions of semi-sweet and milk chocolate and is therefore 100% real chocolate. *See* RJN, Ex. B.

Further illustrative is *Lee v. Mondelez Int'l, Inc.*, 637 F. Supp. 3d 116, 135 (S.D.N.Y. 2022). There, a defendant's failure to use the word "cacao" in its ingredient list was not misleading "because the FDA regulations require the manufacturer to list 'cocoa powder' and 'chocolate liquor,' both forms of processed cacao[, and this] does not mean that the product is not made from 'cacao.'" *Lee*, 637 F. Supp. 3d at 135. Similarly, here, because the FDA requires Nestlé to disclose that its Products contain soy lecithin and natural flavors, it does not detract from the fact that the Products, composites of each of their ingredients, are entirely "chocolate," (or, as Nestlé represents, "100% Real Chocolate") as defined by the FDA's standard of identity. *See Sarr v. BEF Foods, Inc.*, 2020 WL 729883, at *4 (E.D.N.Y. Feb. 13, 2020) (granting motion to dismiss allegation that "Real ... Butter" advertising was misleading because "it is not plausible that a reasonable consumer would likely interpret the 'real butter' representation to imply that the Mashed Potatoes did not also contain additional fats" and the "ingredient list discloses that the product contains vegetable oils."); *Glazebrook v. Chobani LLC*, 619 F. Supp. 3d 231, 237-38 (D. Mass. 2022); *Gubala v. CVS Pharmacy, Inc.*, 2015 WL 3777627, at *6 (N.D. Ill. June 16, 2015).

## B. The IFDCA Lacks a Private Right of Action.

Courts agree that a private citizen cannot maintain a cause of action under the IFDCA. *See, e.g.*, *Berarov v. Archer-Daniels-Midland Co.*, 2019 WL 277717, at *5–6 (N.D. Ill. Jan. 22, 2019) (dismissing IFDCA count because it lacked private right of action); *Huston v. Conagra Brands,*

*Inc.*, 2022 WL 4647251, at *1 n.3 (C.D. Ill. Sept. 30, 2022); *United Food & Com. Workers Unions & Emps. Midwest Health Benefits Fund v. Walgreen Co.*, 2012 WL 3061859, at *3 (N.D. Ill. July 26, 2012), *aff'd*, 719 F.3d 849 (7th Cir. 2013). This Court should hold the same.[4]

### C. Plaintiff Lacks Standing Under the Laws of States in Which She Was Not Injured.

In Count III, Plaintiff asserts purported deceptive trade practices on behalf of a proposed Multi-State Consumer Class comprised of consumers from nine states, including Illinois. To start, Plaintiff's ICFA claim under Count III is identical to Count I and fails for the same reasons. *See supra* section IV.A. Regarding the remaining consumer protection statutes, Plaintiff lacks standing to bring these claims, and they must be dismissed.[5]

Plaintiff, who at relevant times "resided . . . in Chicago, Illinois," "purchased the Products multiple times from stores located in Chicago[,]" Compl. ¶¶ 23-24. Yet, in addition to her ICFA claim, she attempts to assert claims under the consumer protection statutes of California, Florida, Massachusetts, Michigan, Minnesota, New Jersey, New York, and Washington; states in which she alleges no contact or harm. *See generally*, Compl. But Plaintiff cannot bring these claims for the simple fact that she does not have standing to assert claims under the laws of states in which she has not suffered injury. *Baldwin v. Star Sci., Inc.*, 78 F. Supp. 3d 724, 735 (N.D. Ill. 2015) (finding plaintiff lacks standing to bring claims under other states' laws where "[p]laintiff has not suffered an injury in any state other than Illinois" but dismissing claims for failure to state a claim); *see also In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 2013 WL 4506000, at *8 (N.D. Ill.

---

[4] Plaintiff cites *Reuben H. Donnelly Corp. v. Brauer*, 275 Ill. App. 3d 300, 311 (1st Dist. 1995), listing four factors that Illinois courts use to determine whether a private cause of action exists under a statute. *See* Compl. ¶ 146. This case has nothing to do with the IFDCA and, to be sure, does not find that it has a private cause of action (it does not).

[5] Standing is an insurmountable bar to Plaintiff, but, nevertheless, her attempt to raise claims for deception under various state statutes fails for the same reason she cannot plausibly plead deception under the ICFA.

Aug. 23, 2013) (where plaintiffs "have not alleged an injury-in-fact for claims outside of [four states], [they] fail to satisfy their burden of showing Article III standing for states in which they do not reside and/or did not purchase the products at issue."). The same is true of Plaintiff's claims for express warranty (Count IV) and implied warranty (Count V), where she lists the warranty laws of the 50 states, and negligent misrepresentation (Count VI), in an attempt to rope these claims into her request for certification of a national class. *See* Compl. ¶¶ 173, 194, 199. To the extent these claims are premised on the laws of states other than Illinois (where Plaintiff allegedly was injured), they must be dismissed. *See generally, Baldwin*, 78 F. Supp. 3d at 733-35.

### D. Plaintiff Fails to Plausibly Allege a Breach of Express Warranty.

Plaintiff alleges that "100% real chocolate" is made "only [of] ingredients sourced from cacao beans, which include cacao (or cocoa) and cocoa butter." Compl. ¶ 4. Plaintiff cannot plausibly allege that this purported warranty is breached by the presence of "non-chocolate ingredients" soy lecithin and natural flavor because she concedes these ingredients are disclosed on the ingredient panel and according to FDA regulation, this warranty is true. Nor can Plaintiff ignore that the ingredient label also discloses sugar and milkfat, neither of which are "cacao (or cocoa) and cocoa butter." Because her warranty claims rely upon the same factual allegations as Plaintiff's ICFA claims, they fail for nearly the same reason. Without plausibly alleging falsity or deception, Plaintiff cannot plausibly allege breach of a purported "100% Real Chocolate" warranty. *See Fuchs v. Menard, Inc.*, 2017 WL 4339821, at *6 (N.D. Ill. Sept. 29, 2017) (granting motion to dismiss warranty claims because "the labels and advertisements at issue do not make any misleading statements about the size of the lumber," and "the lumber itself was merchantable").

### E. Plaintiff's Implied Warranty Claim Must be Dismissed.

"A breach of implied warranty of merchantability occurs if the product is not 'fit for the

ordinary purpose for which such goods are used.'" *DeMaso v. Walmart Inc.*, 655 F. Supp. 3d 696, 704 (N.D. Ill. 2023). Plaintiff's implied warranty claim fails because she does not, and cannot, allege the Products were inedible or otherwise unusable or unfit for their ordinary purpose. *See id*. (dismissing implied warranty of merchantability claim where plaintiff did not "allege that the cookies are unfit to eat (its ordinary purpose)."); *Rice v. Dreyer's Grand Ice Cream, Inc.*, 624 F. Supp. 3d 922, 930 (N.D. Ill. 2022) (similar).

Next, her claim separately fails for want of privity. *See Sneed v. Ferrero U.S.A., Inc.*, 656 F. Supp. 3d 777, 785 (N.D. Ill. 2023) (noting implied warranties under article II of the UCC, on which Illinois's law is modeled, creates cause of action only against immediate seller). When a manufacturer of a consumer good does not directly sell to a consumer, the plaintiff is unable to allege the privity required to state a claim for breach of implied warranty.[6] *See id*. Here, Plaintiff alleges that she "purchased the Products multiple times from stores located in Chicago." Compl. ¶ 24. She lacks privity with Nestlé, and her implied warranty claim fails.

### F. Plaintiff's Negligent Misrepresentation Is Barred as a Matter of Law.

Plaintiff's negligent misrepresentation claim is barred by the economic loss doctrine because she seeks purely economic losses and thus cannot recover in tort. Under the seminal case *Moorman*, "'economic loss' is defined as 'damages for inadequate value … without any claim of personal injury or damage to other property' … as well as 'the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold." *Moorman Mfg. Co. v. Nat'l Tank Co.*, 91 Ill. 2d 69, 82 (1982).

---

[6] Plaintiff cannot plead around the privity by alleging that she is an "intended beneficiary." Compl. ¶ 188. That exception applies "when the manufacturer and the consumer had a direct relationship, or when the manufacturer knew the identity, purpose, and requirements of the seller's customer and delivered the goods to meet those requirements." *Fullerton v. Corelle Brands, LLC*, 2019 WL 4750039, at *7 (N.D. Ill. Sept. 30, 2019). The Complaint is devoid of any such allegations. *See* Compl.; *Manley v. Hain Celestial Grp., Inc.*, 417 F. Supp. 3d 1114, 1124 (N.D. Ill. 2019).

Plaintiff seeks economic losses. She repeatedly alleges that she suffered injury by purchasing a product with "inferior" ingredients, which she seeks to remedy through monetary damages, including a full refund. *See, e.g.*, Compl. ¶¶ 19, 21, 80, 139, 160, 175, 196, 207. "This is the definition of pure economic loss under *Moorman*, *i.e.*, when the product disappoints the purchaser's commercial expectations and does not conform to its intended use." *Sienna Ct. Condo. Ass'n. v. Champion Aluminum Corp.*, 129 N.E.3d 1112, 111 (Ill. 2018). Thus, Count VI is barred. *See Manley*, 417 F. Supp. 3d at 1120 (negligent misrepresentation claim barred by economic loss doctrine because "plaintiff seeks relief for disappointed commercial expectations: her sunscreen did not perform as she expected, and she wants her money back"); *Floyd v. Pepperidge Farm, Inc.*, 581 F. Supp. 3d 1101, 1112 (S.D. Ill. 2022).

Notwithstanding that this Count is barred by the economic loss doctrine, Plaintiff also fails to plausibly allege negligent misrepresentation. Under Illinois law, there must be "a duty on the party making the statement to communicate accurate information" to state a claim for negligent misrepresentation. *First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 843 N.E.2d 327, 335 (Ill. 2006). The Complaint alleges nothing more than a boilerplate "duty to accurately and truthfully disclose facts," without even a nod to the source of this purported "duty." Compl. ¶ 201. That is because such a duty arises when a defendant is in the business of supplying information, and Nestlé is not such a defendant. For this reason, district courts faced with negligent misrepresentation claims on consumer-packaged goods routinely find that the manufacturer owed no duty to consumers to provide accurate information. *See, e.g., Sneed*, 656 F. Supp. 3d at 786–87 (dismissing negligent misrepresentation claim because manufacturer had no duty to communicate accurate information on product packaging and plaintiff's claims were limited to consumer protection or contract law); *Rudy v. D.F. Stauffer Biscuit Co.*, 666 F. Supp. 3d 706, 723 (N.D. Ill. 2023) (similar).

12

### G. Plaintiff Is Not Entitled to Equitable Remedies.

Illinois law is clear that where a plaintiff is aware of defendant's labeling practices, she can no longer be harmed by the labeling in the future, and therefore lacks standing to pursue injunctive relief. Here, because Plaintiff knows the Products contain soy lecithin and natural flavoring, she cannot be misled in the future (nor was she misled in the past) by their presence in the Products. Dismissal of Plaintiff's request for injunctive relief is thus appropriate. *See Camasta*, 761 F.3d at 741; *Floyd*, 581 F. Supp. 3d at 1113 (agreeing plaintiff lacked "standing to pursue injunctive relief [because she] is now aware that vegetable oil is in the crackers, so she cannot be harmed in the future"); *Chiappetta v. Kellogg Sales Co.*, 2022 WL 602505, at *10 (N.D. Ill. Mar. 1, 2022) (similar). And Plaintiff's request for injunctive and declaratory relief must be stricken because she does not allege the absence of an adequate remedy at law; to the contrary, she repeatedly seeks damages. *See DM Trans, LLC v. Scott*, 38 F.4th 608, 621 (7th Cir. 2022) (affirming denial of injunction where plaintiff had "an adequate remedy at law and would suffer no irreparable harm in the absence of an injunction").

### H. Plaintiff's Claims are Preempted.

As this Court has succinctly explained, "[t]he FDCA contains an express preemption provision … [t]hat [] forbids states from imposing 'any requirement for a food which is the subject of a standard of identity established under section 341 of this title that is not identical to such standard of identity or that is not identical to the requirement of section 343(g).'" *Slowinski*, 2024 WL 3757097, at *10 (quoting 21 U.S.C. § 343–1(a)(1)). Thus, a "state law may not tack on further required disclosures that the federal standard does not mention." *Id*. (quoting *Bell*, 982 F.3d at 484). In *Slowinski*, the plaintiff sought disclosures for microplastics found in spring water, but this ran contrary to the FDA standard of identity for "spring water," which imposed no such requirement. *Id*. at *11. Therefore, "the complaint challenge[d] what it means to be spring water[,]

13

[b]ut defining the essential characteristics of spring water is the exclusive domain of the FDA [and] [p]laintiffs' state-law claims would impose labeling obligations for spring water beyond the FDCA's standard of identity." *Id*. at *12. Accordingly, the plaintiff's claims were preempted.

Here, Nestlé relies on the FDA standard of identity for "chocolate," which allows soy lecithin and natural flavors as optional ingredients in chocolate. *See* 21 C.F.R. § 163.123(b)(3) & (5); 21 C.F.R. § 163.130(b)(3) & (5). Plaintiff cannot attempt to impose upon Nestlé an alternative definition of chocolate. *See Gustavson v. Wrigley Sales Co.*, 961 F. Supp. 2d 1100, 1120 (N.D. Cal. 2013) (granting motion to dismiss claim that label failed to comply with the standard of identity for chocolate due to the lack of disclosures regarding alkali or vanillin because plaintiff "attempt[ed] to impose requirements that are not identical to FDA regulations [and] are expressly preempted and are dismissed for that reason"). Because the Complaint asks this Court to find the Products "are misbranded and falsely advertised" in violation of the ICFA and IFDCA (*see, e.g.*, Compl. ¶ 144), Plaintiff's claims are expressly preempted by the FDCA.

**I.    Plaintiff's Prayer for Punitive Damages Should be Stricken.**

Under Illinois law, punitive damages may be awarded only "when the tort is committed with fraud, actual malice . . . . or when the defendant acts willfully." *Saccameno v. U.S. Bank Nat'l Ass'n*, 943 F.3d 1071, 1082 (7th Cir. 2019) (citation omitted). There are no specific allegations in the Complaint that Nestlé acted maliciously, but rather the bald allegation that "Defendant made the Representation and omissions intentionally, and with reckless disregard for the truth." Compl. ¶ 156. This is nothing but a "the-defendant-unlawfully-harmed-me accusation[,]" *Iqbal*, 556 U.S. at 678 (citation omitted), insufficient under Rule 8, much less the heightened pleading standard of Rule 9(b), and accordingly must be stricken. *See Yasmin & Yaz (Drospirenone) Mktg., Sales Prac. & Prods. Liab. Litig. v. Bayer Corp.*, 2010 U.S. Dist. LEXIS 127727, at *6 (S.D. Ill. Dec. 3, 2010) (striking punitive damages due to insufficient allegations); *Bahl v. D. A. Express, Inc.*, 1990 WL

304278, at *1 (N.D. Ill. June 14, 1990) (same).

### J. Plaintiff's Multi-State and Nationwide Class Allegations Should Be Stricken.

It is well-settled that a named plaintiff in a class action lawsuit is required to establish Article III standing for each claim asserted. *See Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("That a suit may be a class action ... adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.") (quotations and citations omitted); *see DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 337 (2006) ("[A] plaintiff must demonstrate standing for each claim he seeks to press.").

As discussed above, Plaintiff lacks standing to bring claims in Count III under state consumer protection statutes other than those of Illinois, where she was allegedly injured. *See supra* section IV.C. The same is true for the other claims she attempts to assert on behalf of a putative nationwide class. *See* Compl. at ¶ 162 (Count IV: express warranty), ¶ 177 (Count V: implied warranty), and ¶ 199 (Count VI: negligent misrepresentation). She lacks standing to bring these claims under the common law of states other than Illinois for the same reason. *See supra* section IV.C (citing *Baldwin*, 78 F. Supp. 3d at 735; *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 2013 WL 4506000, at *8). Accordingly, the Court must dismiss or strike the multi-state allegations under Count III and nationwide class allegations under Counts IV, V, and VI under Rule 23(d)(1)(D).

## VI. CONCLUSION

For the reasons discussed above, Plaintiff's Complaint should be dismissed, and her putative multi-state and nationwide class allegations should be stricken.

Dated: November 12, 2024                      WINSTON & STRAWN LLP

*/s/ Ronald Y. Rothstein*
Ronald Y. Rothstein
RRothste@winston.com
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601
Tel: (312) 558-5600

Jared R. Kessler
*Pro hac vice*
JRKessler@winston.com
WINSTON & STRAWN LLP
200 S. Biscayne Boulevard, Suite 2400
Miami, FL 33131
Tel: (305) 910-0500

*Counsel for Defendant Nestlé USA, Inc.*