UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| STEPHANIE FOSTER, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 24-cv-8536 |
| v. | ) ) | Hon. Steven C. Seeger |
| NESTLE USA, INC., | ) ) ) | |
| Defendant. | ) ) ) | |

**MEMORANDUM OPINION AND ORDER**

Stephanie Foster has a sweet tooth, and she wanted to sink her teeth into a mouthful of chocolate. By the sound of things, Foster is a foodie. She didn't want just *any* chocolate. She wanted 100% real chocolate.

Foster went shopping at nearby Target and Jewel Osco stores, searching for the best that the cacao bean had to offer. She bought several bags of chocolate chips manufactured by Nestle USA, Inc. The chocolate chips appeared inside an inviting yellow bag that practically begged to be torn open. Each bag had a label promising any hungry consumer that the bag contained "100% real chocolate."

It's hard to imagine that the chocolate chips spoiled her day. Even so, Foster apparently was none too pleased when she realized that the chocolate chips contained soy lecithin and natural flavors.

As Foster sees things, chocolate that contains soy lecithin and natural flavors isn't "100% real chocolate." In fact, it's not chocolate at all. So Foster brought Nestle to federal court. She sues on behalf of herself and a putative class. Nestle moved to dismiss.

For the reasons below, the motion to dismiss is granted. The complaint is half-baked, and is 100% dismissed.

### Background

At the motion to dismiss stage, the Court must accept as true the well-pleaded allegations of the complaint. *See Lett v. City of Chicago*, 946 F.3d 398, 399 (7th Cir. 2020). The Court "offer[s] no opinion on the ultimate merits because further development of the record may cast the facts in a light different from the complaint." *Savory v. Cannon*, 947 F.3d 409, 412 (7th Cir. 2020).

Chocolate comes from cacao beans, which fall like manna from heaven from the cacao tree. The scientific name of the cacao tree is *Theobroma cacao*, which translates to "food of the gods." *See Cacao*, Encyclopedia Britannica, https://www.britannica.com/plant/cacao (last visited March 31, 2026).

Getting to chocolate heaven takes some doing. Raw chocolate beans come in a large pod the size of a small pineapple, and when they first arrive, they look like they're covered in goo. The beans need to be fermented, dried, cleaned, and roasted. The shells contain chocolate nibs, which are ground to chocolate liquor. At that point, the liquor is separated into cocoa solid and cocoa butter. Mixing the cocoa with sugar and other ingredients makes chocolate, and chocolate makes magic. *See Chocolate*, Wikipedia, https://en.wikipedia.org/wiki/Chocolate (last visited March 31, 2026).

Stephanie Foster wanted her own little piece of heaven one day, so she went shopping for chocolate. *See* Cplt., at ¶ 24 (Dckt. No. 1). The complaint doesn't reveal what she planned to do with the chocolate. It simply says that Foster wanted chocolate "for personal and family use." *Id.* at ¶ 96.

Maybe she wanted to bake a chocolate cake.  Or maybe she wanted to whip up some chocolate-chip cookies.  Whatever the plan, chocolate was on her mind and on the agenda.

Foster headed to Target and Jewel Osco hungry for some cocoa-goodness.  *Id.* at ¶ 93.  The complaint doesn't reveal why Foster went to both stores.  After all, Target and Jewel are usually chock-full of chocolate.

By the sound of things, she didn't encounter empty shelves.  Quite the opposite.  Foster "purchased the Products from Target and Jewel Osco stores located in Chicago."  *Id.*  Maybe Foster wanted *a lot* of chocolate.  Or maybe she bought the products at different times.  Or maybe, just maybe, she was claim-shopping while chocolate-shopping.

In any event, Foster decided to buy Nestle's Toll House Morsels.  *Id.* at ¶ 1.  Almost every living American has had Toll House chocolate-chip cookies.  They're a crowd pleaser.  Untold thousands of teenagers have consumed Toll House chocolate-chip cookie bars from sea to shining sea.

The chocolate chips appeared inside Nestle's familiar yellow bag.  It's instantly recognizable to anyone who has turned the oven on, with aspirations to make the whole house smell irresistibly good.

The front of the packaging included a picture of a just-baked chocolate-chip cookie.  Fortunately, the anonymous baker didn't skimp on the chocolate.  Large nuggets of melted goodness filled the cookie, which overflowed with the mounds of chocolate just waiting to be devoured.

The cookie is broken in half, with strands of chocolate oozing out and binding the two halves together.  The chocolate tethers don't look formidable, and they practically invite you to snag half of the broken cookie.

The brokenness of the cookie brings out a person's predatory instincts. The cookie looks vulnerable, an easy target for anyone half-tempted to swipe an easy snack. It's there for the taking.

A few stray morsels sit nearby, as if the baker had extra chocolate to spare. Something about those renegade chocolate chips makes the whole scene even more inviting. They practically beg to be picked up and tossed in the nearest watering mouth.

The packaging includes a familiar splash of color, with a large hunk of red occupying the bottom of the yellow bag. That's where the offending text appeared.

No living person could look at the bag and wonder what's inside. But Nestle apparently wanted to foreclose that possibility. The bag reads: "100% real chocolate."



*Id.* at ¶ 42.

The back of the bag included suggestions for how to enjoy any given day with the chocolate chips. Nestle provided its go-to recipe for Toll House chocolate-chip cookies. And if the consumer didn't want cookies, no problem. The bag also offered a recipe for Nestle's "famous fudge."

4

The back of the bag also included a few more stray, lonely chocolate chips, just waiting to be scooped and devoured. For good measure, the UPC code includes shading that looks like an oven mitt. (Nestle: Whoever came up with that deserves a raise.)

The bags included a detailed list of ingredients. It wasn't a long list. The bag contained "sugar, chocolate, cocoa butter, milkfat, soy lecithin, natural flavors."



*Id.* at ¶ 42.

The list of ingredients isn't hard to spot. But if it makes it easier to see, here is a (admittedly blurry) blowup of the bag:



*Id.*

Nestle makes a bunch of different kinds of chocolate, and Foster decided to do some sampling. She bought bags of Milk Chocolate, Dark Chocolate, and Semi-Sweet Chocolate. *Id.* at ¶ 94.

The complaint doesn't reveal what Foster did with the chocolate. But if she opened the bags, it's hard to imagine that they spoiled her afternoon.

Even so, the chocolate apparently put Foster in an unsavory mood. Foster feels duped.

Foster thinks that "chocolate" means that it can "only have ingredients sourced from cacao beans," meaning cocoa butter and cacao. *Id.* at ¶ 4. But Foster points out that Nestle chocolate chips also contain soy lecithin or natural flavor. *Id.* at ¶¶ 8, 17.

Soy lecithin is a food additive made from genetically modified soy. *Id.* at ¶ 6. It makes chocolate products more viscous, to mimic the consistency of chocolate products that contain only the more expensive cocoa butter. *Id.* at ¶¶ 7–9.

And "natural flavors" are highly processed food additives that enhance the products' sweet chocolatey taste. *Id.* at ¶¶ 12, 15. Foster says that Nestle uses natural flavors in the products to cut manufacturing and ingredient costs. *Id.* at ¶ 16.

In short, Foster alleges that soy lecithin and natural flavors are "inexpensive substitutes for ingredients found in chocolate products that actually contain 100% real chocolate." *Id.* at ¶ 3.

As an aside, Foster didn't object to the presence of sugar. Maybe her sweet tooth didn't mind it.

According to the complaint, Nestle charges a premium for the products, based on the representation that they are 100% real chocolate. *Id.* at ¶ 43. People want the real deal, and Nestle knows it. Maximum chocolate, maximum price.

The complaint compares the prices of Nestle's "100% real chocolate" products with competing chocolate chips that don't claim to be 100% real chocolate.

For example, Foster notes that on Target's website, a 12-ounce bag of Nestle's chocolate chips costs a dollar more than Good & Gather's chocolate chips. *Id.* at ¶¶ 44–45. But unlike

Nestle's products, Good & Gather's chocolate chips state only that they are "made with real chocolate" – not that they contain 100% real chocolate. *Id.* at ¶ 47.

Similarly, Jewel Osco's website indicates that Nestle's chocolate chips cost over a dollar more than Signature SELECT chocolate chips. *Id.* at ¶¶ 48–49. The Signature SELECT products don't market themselves as containing 100% real chocolate. *Id.* at ¶ 51. And in fact, they contain soy lecithin and natural flavors. *Id.* at ¶ 50.

Foster apparently hit the pavement and did some research. Based on her walk down the grocery aisle, Nestle's chocolate chips are the only chocolate chips in retail stores that simultaneously (1) say that they are 100% real chocolate; and (2) contain soy lecithin and natural flavors. *Id.* at ¶ 52.

Other chocolate chip brands that call themselves "100% real chocolate" contain only ingredients from cacao beans – no soy lecithin, and no natural flavors. *Id.* at ¶ 53. For example, the front label on "Enjoy Life" chocolate chips states that they are "100% real chocolate." *Id.* at ¶ 54. But they contain only cane sugar, unsweetened chocolate, and cocoa butter. *Id.* at ¶ 56. Foster says that the Enjoy Life chips are 100% real chocolate, because unsweetened chocolate and cocoa butter are sourced from cacao beans. *Id.* at ¶ 57.

Foster alleges that she would not have bought the Nestle chocolate chips if she had known that the products were not 100% real chocolate. *Id.* at ¶ 99. She stopped buying them once she realized the truth. *Id.* at ¶ 100. But she says that she would buy them again in the future, if they contain 100% real chocolate. *Id.* at ¶ 102.

So Foster came to federal court, bringing six claims. The first three claims fall under consumer-protection statutes. She alleges a violation of the Illinois Consumer Fraud and

Deceptive Business Practices Act ("ICFA"), and the Illinois Food, Drug and Cosmetic Act ("IFDCA"). She brings claims on behalf of a putative class under statutes from other states, too.

For good measure, Foster also brings two breach-of-warranty claims, and a negligent misrepresentation claim.

Nestle moved to dismiss.

### Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. *See* Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). When considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *See AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).

To survive a Rule 12(b)(6) motion, the complaint must provide the defendant with fair notice of the basis for the claim, and it must be facially plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Iqbal*, 556 U.S. at 678.

Additionally, claims of common-law fraud or deceptive practices under the ICFA require the plaintiff to meet the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure. *See Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738 (7th Cir. 2019). Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." *See* Fed. R. Civ. P. 9(b). The plaintiff must allege the "who, what, when, where, and how" of the alleged fraud. *See Vanzant*, 934 F.3d at 738.

8

**Analysis**

Foster's claims share a common ingredient. The claims require a false or misleading statement that deceives a reasonable consumer. A reasonable consumer would buy chocolate chips, but no reasonable consumer would confuse chocolate chips with cacao powder and cacao butter.

## I.     The Illinois Consumer Fraud and Deceptive Business Practices Act

The first claim falls under the Illinois Consumer Fraud and Deceptive Business Practices Act. The statute protects reasonable consumers. No reasonable consumer would need protection from Nestle's bag of chocolate chips.

A claim under the ICFA has five elements: (1) a deceptive act or practice, (2) an intent for the consumer to rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage that was (5) proximately caused by the deception. *See Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 883 (7th Cir. 2005); *see also Sneed v. Ferrero U.S.A., Inc.*, 2023 WL 2019049, at *2 (N.D. Ill. 2023).

"[A] statement is deceptive if it creates a likelihood of deception or has the capacity to deceive." *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001). A deceptive statement is "likely to deceive a reasonable consumer." *See Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 972 (7th Cir. 2020).

This standard "requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *See Bell v. Publix Super Mkts., Inc.*, 982 F.3d 468, 474–75 (quoting *Beardsall*, 953 F.3d at 972–73); *see also Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) (explaining that a misrepresentation meets that standard if it "is either (1) literally false, or (2) likely to mislead

9

(either through a statement or material omission) a reasonable consumer") (quotation marks omitted).

Whether a statement is deceptive is often a question of fact. *See Bell*, 982 F.3d at 473. But not always. A claim can't get off the ground unless the statement in question could mislead a reasonable consumer. *Id.* at 477; *Bober*, 246 F.3d at 940.

"Courts apply a 'reasonable consumer' standard to analyze the likelihood of deception." *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019) (quoting *Mullins v. Direct Digit., LLC*, 795 F.3d 654, 673 (7th Cir. 2015)).

The standard is objective, not subjective. It is not enough to allege that the product misled a particular plaintiff. Idiosyncratic readings of a label don't cut it. What matters is how a reasonable consumer would read the packaging. *See Gardner v. Ferrara Candy Co.*, 2023 WL 4535906, at *3 (N.D. Ill. 2023).

Foster believes that she got duped by the phrase "100% real chocolate." She points out that the Nestle chocolate chips contain soy lecithin and natural flavors. As she sees things, chocolate doesn't have soy lecithin or natural flavors. Chocolate "only ha[s] ingredients sourced from cacao beans, which include cacao (or cocoa) and cocoa butter." *See* Cplt., at ¶ 4 (Dckt. No. 1).

Dispensing with Foster's claim takes less time than whipping up a batch of Toll House cookies.

Strictly speaking, the phrase "100% real chocolate" could mean a few different things. It depends on what "100%" modifies. It could mean that 100% of the bag is "real chocolate." Or it could mean that the chocolate is "100% real." For those who enjoyed algebra, it could mean "100% (real chocolate)" or "(100% real) chocolate."

10

Either way, it doesn't matter. Maybe the target of the word "100%" is ambiguous, but the overall meaning is not. Every reasonable consumer knows the situation. The bag contains chocolate chips, and nothing else.

Foster's claim rests on the meaning of the word "chocolate." She alleges that chocolate "only" contains "ingredients sourced from cacao beans," and doesn't include soy lecithin or natural flavors. *See* Cplt., at ¶ 4 (Dckt. No. 1).

That theory comes out of thin air. The complaint doesn't cite anything for the notion that chocolate only contains ingredients that come from cacao beans, and nothing else. She doesn't cite a definition of "chocolate." She offers no source for her idiosyncratic understanding of the essence of chocolate. She doesn't cite a consumer survey, either.

No reasonable consumer thinks that chocolate "only" contains the byproduct of cacao beans. For starters, cacao beans aren't sweet. They need sugar. Sugar is a necessary ingredient of chocolate. And sugar doesn't come from a cacao bean.

If you're skeptical, try choking down a handful of raw chocolate nibs, and see what happens. Put a spoonful of raw cacao powder in your mouth, and you'll instantly understand that chocolate isn't just from the cacao bean.

Chocolate is a composite product. It contains other ingredients, by definition.

The FDA has had a thing or two to say about the essence of chocolate. The FDA recognizes that chocolate is a mixture of many things. *See* 21 C.F.R. § 163.123 (defining "sweet chocolate" as a mixture of chocolate liquor and "optional ingredients" including cacao fat, sweeteners, spices, natural and artificial flavorings, dairy ingredients, and emulsifying agents). The FDA accepts that chocolate can include "natural and artificial flavorings" and "emulsifying agents." *Id.* at § 163.130(b)(3)–(5).

11

Soy lecithin – one of the ingredients that Foster challenges – is an emulsifying agent. *See* National Confectioners Association, *Ingredients in Chocolate*, https://candyusa.com/story-of-chocolate/what-is-chocolate/ingredients-in-chocolate/ ("Lecithin: An emulsifier, often made from soy, that makes the ingredients blend together.").

The FDA also requires "milk chocolate" and "sweet chocolate" to contain a minimum amount of "chocolate liquor" to be legally labeled "chocolate." In turn, chocolate liquor contains "cacao nibs" and "cacao fat." *See* 21 C.F.R. § 163.111(a)(1). And chocolate liquor may contain alkali ingredients (*i.e.*, ammonium and potassium), neutralizing ingredients, "spices, natural and artificial flavorings, butter, milkfat, and/or salt." *See* 21 C.F.R. § 163.111(b)(1)–(6).

True, the FDA's definition is hyper-technical, and contains some scientific mumbo-jumbo. The agency uses terms like "semiplastic," "nutritive carbohydrate sweeteners," and so on. But the key point jumps off the page: chocolate is a composite product.

Candymakers have weighed in, too. The National Confectioners Association says that chocolate is made of chocolate liquor, cocoa butter, sugar, lecithin, and vanilla. *See Ingredients in Chocolate*, National Confectioners Association, https://candyusa.com/story-of-chocolate/what-is-chocolate/ingredients-in-chocolate/.

Foster might take issue with Nestle's use of soy lecithin and natural flavors, but the food industry thinks that those ingredients are part and parcel of chocolate.

Dictionaries agree that chocolate includes cacoa beans, plus a number of other ingredients. *See Chocolate*, Merriam Webster, https://www.merriam-webster.com/dictionary/chocolate ("a food prepared from ground roasted cacao beans") (last visited March 31, 2026); *Chocolate*, Oxford English Dictionary, https://www.oed.com/dictionary/chocolate ("A type of solid confectionery made of processed cocoa beans (and *usually other ingredients*), often sold in

12

rectangular bars (cf. chocolate bar n.) or used as a coating on other confectionery.") (emphasis added) (last visited March 31, 2026); *Chocolate*, Britannica, https://www.britannica.com/topic/chocolate ("[a] food product made from cocoa beans, consumed as candy and used to make beverages and to flavour or coat various confections and bakery products . . . [and] contains minute amounts of the stimulating alkaloids caffeine and theobromine") (last visited March 31, 2026).

The fact that chocolate contains more than cacao beans isn't a news bulletin to anyone. "Chocolate is a solid mixture.  In its basic form, it is composed of cacao powder, cocoa butter, and some type of sweetener such as sugar; however, modern chocolate includes milk solids, any added flavors, modifiers, and preservatives."  *See What is chocolate?*, MIT Laboratory for Chocolate Science, https://chocolate.mit.edu/science/ (last visited March 31, 2026). In fact, soy lecithin "is quite a common chocolate ingredient, even in the realm of craft chocolate."  *See Complete Guide to the Ingredients in Chocolate*, Dame Cacao https://damecacao.com/ingredients-in-chocolate/ (last visited March 31, 2026).  "Natural flavors" can be "extra ingredients in chocolate," too.  *Id.*; *see also* Maria Teresa Montagna et al., *Chocolate "Food of the Gods": History, Science and Human Health*, 16 INT. J. ENVIRON. PUB. HEALTH, no. 24, 2019, at 2 of 21 ("Milk chocolate contains cocoa butter, sugar, milk powder, lecithin, and cocoa . . . .").

Foster relies on the Seventh Circuit's decision in *Bell v. Publix Super Markets*, 982 F.3d 468 (7th Cir. 2020), but it can't come to the rescue.  The district court in *Bell* dismissed a misrepresentation claim about parmesan cheese, meaning the powdery stuff in a can.  It appeared in a canister with a label saying "100% Grated Parmesan Cheese."

13

The district court pointed out that the ingredients list on the back of the can cleared up any potential ambiguity. The Seventh Circuit reversed, holding that an "accurate fine-print list of ingredients does not foreclose as a matter of law a claim that an ambiguous front label deceives reasonable consumers." *Id.* at 476.

Here, a consumer doesn't have to read the fine print on the back of the bag of chocolate chips to figure out that chocolate contains more than cacao beans. The front of the bag tells the consumer everything that he or she needs to know.

"Chocolate" appears on the front of the bag. And reasonable consumers know that chocolate is a composite product and contains several ingredients.

"What matters most is how real consumers understand and react to the advertising." *Id.* Figuring out that chocolate is more than cacao beans doesn't require consumers to "question the labels they see and to parse them as lawyers might for ambiguities." *Id.* at 476.

Courts don't have to treat consumers like eggshell-skull plaintiffs, wandering bewildered down the grocery aisle in the Land of Confusion. And at some point, it is not asking too much to expect a reasonable consumer to read the list of ingredients if they're unsure.

Maybe there are limits on the ability of courts to apply "common sense" when evaluating labeling. *See Bell*, 982 F.3d at 482–83. But courts do not have to check common sense at the door, either. After all, the standard is a "reasonable consumer," and reasonability has its limits.

Courts don't have to give companies the benefit of the doubt when their advertising is genuinely ambiguous, and potentially deceptive. But courts shouldn't bend over backwards to find ambiguities where none exist, either.

14

No reasonable consumer would read the phrase "100% real chocolate" as a representation that the bag contains only the byproducts of cacao beans. A true chocolate lover wouldn't believe that, and a reasonable consumer wouldn't either.

## II.    Remaining Counts

Foster brings five other claims, too. They don't fare any better.

The second claim falls under the Illinois Food, Drug and Cosmetic Act. But that statute does not create a private right of action. *See, e.g.*, *Berarov v. Archers-Daniels-Midland Co.*, 2019 WL 277717, at *6 (N.D. Ill. 2019) ("The Court agrees" that "the Illinois Food, Drug and Cosmetic Act does not contain a private right of action."); *Huston v. Conagra Brands, Inc.*, 2022 WL 4647251, at *1 n.3 (C.D. Ill. 2022) ("[T]here is no private right of action under either the FDCA or the ILFDCA."); *United Food and Com. Workers Union & Employers Midwest Health Benefits Fund v. Walgreen Co.*, 2012 WL 3061859, at *3 (N.D. Ill. 2012) ("[T]he FDCA, the ILFDCA, and similar statutes do not create a private right of action.").

The third claim falls under consumer-protection laws from other states. Foster provides almost no explanation about those state statutes, so the Court assumes that they are substantially similar to the ICFA. *See, e.g.*, *DeMaso v. Walmart Inc.*, 655 F. Supp. 3d 696, 704 n.4 (N.D. Ill. 2023); *Hamidani v. Bimbo Bakehouse LLC*, 2023 WL 167513, at *2 n.2 (N.D. Ill. 2022); *Jacobs v. Whole Foods Mkt. Grp.*, 621 F. Supp. 3d 894, 897–98 (N.D. Ill. 2022). Those statutes presumably apply to a reasonable consumer, so claims under those statutes can't survive. If those state statutes protect unreasonable consumers, then Foster could seek leave to amend.

The next two claims are warranty claims. They rest on the premise that Nestle made a representation about the contents of the bag – that is, that the chocolate only contained ingredients from cacao beans. Nestle said no such thing, so the claims are dismissed.

15

The last claim is a negligent misrepresentation claim. But once again, the complaint fails to identify a misrepresentation, so it cannot survive.

### Conclusion

For the foregoing reasons, Defendant's motion to dismiss the complaint is granted.

Date:  March 31, 2026

_____

Steven C. Seeger
United States District Judge

16